UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES  UNGER, | ) | |
| TAMORA  UNGER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 1:12-cv-00948-LJM-TAB |
| | ) | |
| MELISSA  BLEVINS-FOSTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs James and Tamora Unger (collectively, the "Ungers") have sued a number of individuals.  The complaint is over thirty pages long and alleges violations of federal and state law.   Among the defendants are four Muncie Police officers, the Delaware County Sheriff, the Chief Investigator of the Delaware County Prosecutor's Office, the City of Muncie, Indiana, and Delaware County, Indiana.    All of the law enforcement officials, including the Chief Investigator, are sued in their individual and their official capacities.   The matter now pends before this Court on motions for judgment on the pleadings filed on behalf of the City of Muncie, the County of Delaware and all the law enforcement officials.  The Court rules as follows.

## I. <u>STANDARDS</u>

### A. JUDGMENT ON THE PLEADINGS

The Court decides motions brought under Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)(1)") by the same standard as that for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See R.J. Corman Derailment Servs., LLC v.*

*Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003).  The Court may consider only the pleadings and must view the allegations in the light most favorable to the non-moving party.  *See id.*  The pleadings include the complaint, the answers, and any documents attached thereto as exhibits.  *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998); *Wright v. Assoc'd. Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (stating that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim").  The Court may also take judicial notice of matters of public record and not subject to reasonable dispute.  *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (citations omitted).  Furthermore, "[a] judgment on the pleadings is proper when only questions of law, and not questions of fact, exist after the pleadings have been filed."  *All Am. Ins. Co. v. Broeren Russo Const., Inc.*, 112 F. Supp. 2d 723, 728 (C.D. Ill. 2000).  Generally, the Court will presume the facts as alleged by the Ungers to be true, but it is not bound by the Ungers' legal characterization of facts.  *See Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

### B.  42 U.S.C. § 1983

The elements of any claim brought pursuant to 42 U.S.C. § 1983 are simple:  "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  To claim that a state actor is liable in his individual capacity, the Ungers must allege personal involvement in the claimed deprivation of a

constitutional right.  *See Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) ("'An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.'" (quoting *Wold-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1985))).

A claim against a state actor in his official capacity is a claim against the municipality itself.  *See Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008).  A municipality may be held liable under § 1983 when "execution of a government's policy or custom inflicts the injury."  *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008).  Thus, the Ungers must plead facts that, if proven, show either that Delaware County or the City of Muncie had an express policy, widespread practice or custom or custom that caused the constitutional injury, or that the constitutional injury was caused by a person with final policymaking authority.  *See id.*

Since the U.S. Supreme Court's decision in *Bell Atlantic  Corp. v. Twombly*, 550 U.S. 544 (2007), district Courts in the Seventh Circuit have applied the following standard to official capacity claims brought pursuant to § 1983:  "an official capacity claim can survive even conclusory allegations that a policy or practice existed so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Riley v. Cnty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010).  The assessment is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### C.  42 U.S.C. § 1985(3)

To state a claim that any of the Defendants are liable to them pursuant to 42 U.S.C. § 1985(3), the Ungers must show that the Defendants agreed to injure them (or

that an actual conspiracy existed); that the purpose of the agreement was to deprive the Ungers of equal protection under the Constitution; that an act was committed in furtherance of the conspiracy; and that the Ungers were injured.  *See Alexander v. City of South Bend*, 433 F.3d 550, 556-57 (7th Cir. 2006) (citing *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002)); *see also* Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008). The conspiracy alleged "must be motived by racial, or other class-based discriminatory animus."  *Smith*, 550 F.3d at 617.

## II. THE UNGERS' ALLEGATIONS

The facts in the light most favorable to the Ungers are:

Randal Hudson ("Hudson"), Tamora Unger's son, had been living in a home that he owned jointly with former girlfriend Courtney N. Sigler ("Sigler"), a Defendant in this case.  The joint ownership of the real estate was not known to the Ungers or other persons until after the death of Hudson.  Compl. ¶ 20.  Before and during the relationship with Sigler, Hudson was employed and purchased many items of personal property that he used in the residence they shared.  *Id.* ¶ 21.  The couple had separated in early May 2011, and Sigler had removed her possessions from the home on or about May 9, 2011.  *Id.* ¶ 22.  According to the Complaint, Hudson was the only one occupying the real estate after Sigler removed her possessions from the home and Sigler was residing at another home, having abandoned her house and other possessions.  *Id.* ¶ 22.

On May 11, 2011, Hudson was found dead of an apparent suicide at the home. *Id.* ¶ 24.  Thereafter, the Ungers went to the home to retrieve personal property that Hudson owned at the time of his death.  The Ungers had previously entered the

4

residence with the permission of Hudson on many occasions.  Hudson had also provided a key to the Ungers to facilitate their entry into the residence.  Hudson had changed the locks to the residence after Sigler had abandoned the premises.  The Ungers believed that, since Hudson was the only occupant at the time of his death, they could again use their key for entry and retrieve Hudson's personal property.  *Id.* ¶ 25. The Ungers had a good faith belief that Hudson had purchased and owned all of the personal property that they removed from the home following Hudson's death.  *Id.* ¶ 26.

On May 16, 2011, Defendants George Hopper ("MPD Officer Hopper"), and Robert D. Scaife ("MPD Officer Scaife"), both Muncie Police officers, visited the Ungers' home and informed James that they could arrest Tamora for removing Hudson's possessions from Hudson's house. *Id.* ¶ 27.

On May 24, 2011, Defendant Jerry W. Cook ("PA Investigator Cook"), Chief Investigator, Delaware County Prosecutor's Office, informed Tamora that he had a copy of felony charges that had been prepared because Tamora had removed Hudson's property from Hudson's house.  *Id.* ¶ 28.  The next day, Tamora obtained bank records using her son's power of attorney to confirm that the property she and James had removed from Hudson's home had been purchased by Hudson.  *Id.* ¶ 29.

On May 26, 2011, Tamora and her mother-in-law visited PA Investigator Cook to discuss the felony charges; Tamora had the bank records and bills of sale for the removed property with her for the meeting.  *Id.* ¶¶ 30 & 31.  According to the Complaint, PA Investigator Cook told Tamora that she had no right to remove personal property from Hudson's home and claimed that the State would look at the property that had been removed as "marital property" that belonged to Sigler because Hudson had been

living with Sigler before his death. *Id.* ¶ 32. The Ungers allege that PA Investigator Cook knew Hudson and Sigler had never been married and "could not own personal property jointly." *Id.* Tamora had talked to an attorney about her son's estate and informed PA Investigator Cook that Hudson and Sigler had never been married and that Indiana did not recognize "common law" marriages. *Id.* First ¶ 34.[1]

On May 27, 2011, PA Investigator Cook called Tamora and asked her if she had returned Hudson's property. *Id.* ¶ 33. Tamora informed PA Investigator Cook that she had not and would not be able to do so until James returned home from work with his truck. *Id.*

The Ungers were arrested at approximately 4 p.m. on May 27, 2011, the Friday before the Memorial Day holiday weekend, pursuant to arrest warrants and charges filed in the Delaware County Circuit Court 1. *Id.* Second ¶ 34 & ¶ 44. The Complaint alleges that the warrant issued without probable cause. *Id.* ¶ 54. In addition, the Ungers allege that PA Investigator Cook knew that filing class B felony charges against the Ungers would require a "no bond" hold on the Ungers over the holiday weekend and that they could not be released until "the Courts set an initial hearing at some point." *Id.* The Ungers were charged with burglary and receiving stolen property. *Id.* ¶ 35. No bail was set because a local rule requires an initial hearing first. *Id.* ¶ 36.

MPD Officer Scaife visited Tamora while she was in jail on May 27, 2011. *Id.* ¶ 38. The Complaint alleges that MPD Officer Scaife threatened to shoot the Ungers' family dog while the Ungers were in jail. *Id.*

---

[1] The Ungers' Complaint is set forth in consecutively-numbered paragraphs until page 8, where the paragraphs skip from 32, to 34, to 33, then 34 again; thereafter, paragraphs are listed consecutively again, starting with the second paragraph 34, but there is no paragraph 37. Compl. at 8-9.

Also on May 27, 2011, PA Investigator Cook obtained a search warranted that allowed for the removal of Hudson's property from the Ungers' home. *Id.* ¶ 87. MPD Officer Scaife and MPD Officer Jeff Watson ("MPD Officer Watson") executed the search warrant during the time the Ungers' were in jail. *Id.* ¶ 39. The Complaint alleges that MPD Officers Scaife and Watson allowed Sigler and Defendant Phillip Stanley ("Stanley") into the Ungers' residence during execution of the warrant. *Id.* ¶ 40. Sigler and Stanley took the Ungers' keys while they were in the Ungers' residence with MPD Officers Scaife and Watson. *Id.* ¶ 41.

Sigler and Stanley, along with Defendant Melissa Blevins-Foster ("Blevins-Foster"), returned to the Ungers' residence and removed additional property from the Ungers' house. *Id.* ¶ 43. At no time did the Ungers give Sigler, Stanley or Blevin'-Foster permission to obtain their keys or enter their residence while they were incarcerated. *Id.* ¶¶ 42 & 43.

Pursuant to local rules, the Delaware County Court sets criminal hearings on each Monday and Thursday in Delaware County Circuit Court 1. *Id.* ¶ 47. The Ungers allege that Defendant Delaware County Sheriff Michael Scroggins ("Sheriff Scroggins"), was responsible for promptly taking the Ungers before the Delaware Circuit Court 1 Judge for their initial hearing. *Id.* ¶ 69. On Tuesday, May 31, 2011, the Delaware County Sheriff's Department notified Delaware County Circuit Court 1 that the Ungers were in custody. *Id.* ¶ 45. The same day, Delaware County Circuit Court 1 set the Ungers' matter for an initial hearing on Monday, June 6, 2011, rather than on Thursday, June 2, 2011, the next day upon which that court was to hold criminal hearings. *Id.* ¶¶ 46 & 48.

On June 6, 2011, when their initial hearing was held, the Ungers were released on home detention pending trial.  *Id.* ¶ 49.  The Ungers were not afforded any type of bond, review or initial hearing during the ten (10) days they were held in the Delaware County jail.  *Id.* ¶ 41.

On June 14, 2011, Tamora filed a burglary report with the MPD for removal of the Ungers' personal property from the Ungers' residence by Sigler.  *Id.* ¶ 52.

On December 26, 2011, the criminal proceedings initiated against the Ungers were terminated upon the request of the State of Indiana in favor of the Ungers.  *Id.* ¶ 53.

The Ungers allege that they were prevented from grieving and mourning Hudson's death as a direct result of the Defendants' extreme and outrageous conduct.  *Id.* ¶ 55.  They claim that each of them developed depression, physical illness, sleep disorders, fear and anxiety related to their feelings of insecurity within their home, fear of being retaliated against on the streets and in public places, marital and emotional problems as well as symptoms of Post-Traumatic Stress Disorder.  *Id.* ¶ 56.

The Ungers assert the following claims:

Count I – Deprivation of liberty without due process on the part of Sheriff Scroggins and Delaware County for failure to bring the Ungers before the Court in a timely manner for an initial hearing, alleged to be unlawful under 42 U.S.C. § 1983;

Count II – Deprivation of property without due process on the part of PA Investigator Cook, Delaware County, MPD Officers Hopper, Ramsey, Scaife and Watson (these Defendants, collectively, the "MPD Officer Defendants") and the City of

Muncie for taking personal property that belonged to the Ungers, also alleged to be unlawful under § 1983;

Count III – Conspiracy on the part of PA Investigator Cook, Delaware County, the MPD Officer Defendants, the City of Muncie and Blevins-Foster, Foster, Sigler and Stanley (these Defendants, collectively, the "Individual Defendants") for collaborating to deprive the Ungers of their civil rights, alleged to be unlawful under 42 U.S.C. § 1985(3);

Count IV – Abuse of process against PA Investigator Cook, Delaware County, the MPD Officer Defendants, the City of Muncie and the Individual Defendants;

First Count V[2] – Malicious prosecution against PA Investigator Cook, the MPD Officer Defendants and the Individual Defendants;

Second Count V – Intentional infliction of emotional distress against PA Investigator Cook, the MPD Officer Defendants and the Individual Defendants;

Count VI – Conversion against the Individual Defendants; and

Count VII – Trespass against PA Investigator Cook, Delaware County, the MPD Officer Defendants, the City of Muncie and the Individual Defendants.

For clarity, the Court will address the moving Defendants' arguments as to each Count alleged in the Complaint.  The Court will set forth additional facts alleged in the pleadings as necessary.

### III. COUNT I – ALLEGEDLY UNCONSTITUTIONAL TEN-DAY DETENTION

The Ungers' have alleged that Sheriff Scroggins, and by association, Delaware County, deprived them of their liberty without due process when they were held for ten

---

[2] The Complaint contains two, different alleged causes of action labeled "COUNT V," Compl. at 28-29.  For clarity, the Court has added the designations "First" and "Second" to delineate between these two allegations.  The remaining allegations will be labeled according to the labels in the Complaint.

days prior to their initial hearing.  Delaware County argues that it cannot be held liable for the acts or omissions of Sheriff Scroggins under § 1983 because a sheriff is not a representative of a county; rather, the office is created by the Indiana Constitution.  Dkt. No. 65, at 8-9 (citing, *inter alia*, *Estate of Drayton v. Nelson*, 53 F.3d 165, 167-68 (7th Cir. 1994); *Oswalt v. Grant County*, Cause No. 1:08-CV-194, 2010 WL 503035, at *12 (N.D. Ind. Feb. 8, 2010); *Hodge v. County of Del.*, No. 1:09-cv-519-WTL-DML, 2009 WL 3415131, at *3 (S.D. Ind. Oct. 16, 2009)).  The Ungers concede that the case law precludes liability for Delaware County based on any acts or omissions by Sheriff Scroggins, but requests that the Court consider the facts and circumstances of this case to reach an alternative conclusion.  Dkt. No. 72, at 7-8.

Without more from the Ungers, the Court must conclude that Delaware County cannot be responsible for any acts or omissions of Sheriff Scroggins.  As capably stated in other cases, the office of county sheriff is created by the Indiana Constitution and the legislature determines his powers and duties.  Ind. Const. Art. 6, Sec. 2; Ind. Cod § 36-2-13-5.  Any powers of county commissioners relating to a county sheriff "do not relate to the ability to control the acts performed by any deputy or, indeed, by the sheriff." *Delk v. Bd. of Comm'rs of Del. Cnty.*, 503 N.E.2d 436, 440 (Ind. Ct. App. 1987).  There is simply no basis to impute liability to Delaware County for any acts or omissions by Sheriff Scroggins or his deputies.  *See Estate of Drayton*, 53 F.3d at 167-68.

With respect to the Ungers' allegations against Sheriff Scroggins in his individual and official capacity, Sheriff Scroggins argues that there is no basis to hold him liable because he did not individually participate in the alleged constitutional deprivation; nor is there an allegation that he acquiesced to any alleged constitutional deprivation.  Dkt.

No. 65, at 12-13.  In addition, Sheriff Scroggins asserts that the four-day delay of the Ungers' initial hearing as alleged cannot, as a matter of law, meet the "shocks the conscience" standard for violation of the Due Process Clause.  *Id.* at 14-17.  Further, the Sheriff avers that there is no plausible claim for entity liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), or liability under the Equal Protection Clause under the theory of a class of one.  *Id.* at 18-20.

The Ungers claim that they have alleged sufficient facts to support liability of Sheriff Scoggins.  Dkt. No. 72, at 8 (citing Compl. ¶¶ 69, 72-75) & 10-11.  Specifically, the Ungers allege that Sheriff Scroggins knew the local court rules; knew they were charged with felonies and would have to attend an initial hearing before a bond would be set; and knew that criminal hearings would be held on June 2, but failed to bring the Ungers to court on that date.  *Id.* at 8.  In addition, with respect to the timing of their initial hearing, the Ungers assert that their ten-day detention is enough to support their claim that Sheriff Scroggins violated their due process rights.  *Id.* at 11-17.  Further, the Ungers allege that they have stated a claim for entity liability because they alleged that Sheriff Scroggins, the decision-maker with respect to a timely hearing, deprived them of their rights to an initial hearing on June 2 and that they were treated differently than others similarly situated.  *Id.* at 17-23.

The Court concludes that the Ungers' have pled enough facts to show that Sheriff Scroggins knew or should have known that his policy to rely on the court to set a hearing date may violate the rights of detainees.  To be held liable, "'[s]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.  They must in other words act either knowingly or with

deliberate, reckless indifference."'" *Backes v. Village of Peoria Heights*, 622, F3d 866, 870 (7th Cir. 2011) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)).   Here, the allegations are that the Sheriff's department affirmatively failed to schedule a hearing for the Ungers in a timely fashion pursuant to common practice and/or policy; a policy that is set by and condoned by Sheriff Scroggins, as the elected official with decision-making authority.   The Ungers were incarcerated pursuant to a warrant issued by the Delaware County Circuit Court, which necessarily required a judicial determination that probable cause existed for the arrest.  Ind. Code § 35-33-2-1(c)(2).  In such a case, a claim for a violation of due process falls under the Fourteenth Amendment.  *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1069 (7th Cir. 2012) (citing *Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998)).   Therefore, the Complaint must state a plausible claim that the Sheriff's "executive abuse of power shocks the conscience." *Armstrong*, 152 F.3d at 570.

The Seventh Circuit has provided a three-pronged approach to the analysis: the Court must first consider "whether the Due Process Clause protects against an extended detention, without an appearance before a magistrate, following an arrest pursuant to valid bodily attachment;" then the Court should "explore whether the [Sheriff's] conduct offended the standards of substantive due process;" lastly, the Court should "consider whether the totality of the circumstances shocks the conscience." *Id.* Both parties acknowledge that neither the Supreme Court nor the Seventh Circuit has set a constitutional time limit for detentions after an arrest pursuant to a warrant.    Dkt. No. 65, at 15-16; Dkt. No. 72, at 16-17.  Here, the Ungers have alleged that the Sheriff knew that criminal hearings were held on Thursdays and Tuesdays; that Sheriff

12

Scroggins has a statutory duty to bring a detainee before a court for an initial hearing promptly; and that, rather than bringing the Ungers before the Court at the first possible opportunity after their detention, Sheriff Scroggins abrogated that responsibility to the Delaware County Circuit Court. Under these facts, it is plausible to conclude that such an abrogation offends the standards of substantive due process such that, under the totality of the circumstances here, it shocks the conscience. Sheriff Scroggins concedes that the department policy is to notify the court that persons are being held and allow the court to schedule the hearing; therefore, there are enough facts pled here to withstand Sheriff Scroggins' challenge to liability.

The Ungers' "class of one" claim fails, however, because they have not alleged they are in a protected class or alleged that they were treated differently than similarly-situated detainees. *See LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941-42 (7th Cir. 2010) (discussing the requirements for pleading a class of one equal protection claim).

## IV. COUNT II – ALLEGED DEPRIVATION OF PROPERTY

The Ungers have alleged that PA Investigator Cook, and by association Delaware County; as well as the MPD Officer Defendants, and by association the City of Muncie; deprived them of their property without due process when the Defendants caused a search warrant to issue, executed the search warrant at the Ungers' property without permission and when the Ungers were not present, allowed civilians to participate in the search, and allowed the civilians to obtain keys to the Ungers' residence.

13

## A.  PA INVESTIGATOR COOK & DELAWARE COUNTY

PA Investigator Cook argues that he is entitled to prosecutorial immunity for his role in causing charges to be brought against the Ungers.  In addition, he contends that he had no personal role in executing the warrant, therefore, he cannot be held personally liable for any alleged constitutional deprivation that resulted therefrom.

The Ungers assert that PA Investigator Cook is not entitled to prosecutorial immunity and that he personally caused the warrant to issue that led to an unconstitutional deprivation of their property; therefore, Cook can be held personally liable.

Under federal law, prosecutors, and by association those in their employ, have immunity from acts performed as an advocate, but not for investigative acts.  *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997).  Although PA Investigator Cook would have immunity for his role in causing charges to be brought against the Ungers, which is a prosecutorial function, he would not be immune for his role in causing a search warrant to issue, which is considered an investigative act.  *Id.* at 130-31.  Applying this principle to the facts alleged against PA Investigator Cook with respect to issuance and execution of the search warrant, the Court concludes that PA Investigator Cook is not immune from suit for causing the search warrant to issue; however, the Ungers have not pled a plausible claim under the Fourth Amendment.

A warrant must be supported by probable cause and particularly describe the place to be searched and the things to be seized.  U.S. Const. amend. IV.  Here, the Ungers allege that PA Investigator Cook "took actions to obtain a search warrant to retrieve items of personal property from [the Ungers'] residence that belonged to []

Hudson without informing the approving Judge of all the facts and circumstances known at the time the warrant was obtained."   Compl. ¶ 87.   However, "all the facts and circumstances known at the time the warrant was obtained" as set forth in the Complaint cannot support a conclusion that the the Ungers had any property interest in Hudson's belongings.   There are no allegations in the Complaint that the Ungers or Tamora were the sole heirs of Hudson, or that Tamora had been appointed executrix of Hudson's estate at the time the Ungers removed Hudson's property from Hudson's home, or that there was any other reasons to conclude that the Ungers were entitled to possession of Hudson's property at the time the events described in the law suit took place.   Therefore, even if PA Investigator Cook had failed to inform the approving Judge of all the facts and circumstances alleged in the Complaint, the relevant circumstances (including the receipts showing that Hudson had bought certain property) supported probable cause to enter the Ungers' residence to retrieve Hudson's items.   In other words, the Ungers' allegations do not plausibly state a claim that PA Investigator Cook obtained the warranted limited to the recovery of Hudson's property without showing probable cause.

Furthermore, there are no allegations to support a conclusion that PA Investigator Cook had any personal role in executing the warrant.   Absent some direct role in removal of property outside the scope of the warrant, PA Investigator Cook cannot be held personally liable to the Ungers for the allegedly unconstitutional deprivation of their property.   *Kuhn*, 678 F.3d at 555-56.

The Ungers have alleged no facts to support a claim that Delaware County may be held liable for any allegedly unconstitutional acts by PA Investigator Cook.   In fact,

PA Investigator Cook is not an employee of the county; rather, by statute, PA Investigator Cook is hired by the elected prosecutor, a position created by the Indiana Constitution.  Ind. Const. Art. 7, § 16; Ind. Code § 33-39-4-1.  Therefore, like with the role of sheriff, absent exigent circumstances not alleged here, Delaware County cannot be held liable for acts or omissions by PA Investigator Cook.  Moreover, none of the allegations against PA Investigator Cook rely upon any laws or ordinances established by Delaware County; therefore, there can be no law, policy or practice set by Delaware County to form the basis for municipal liability.

For these reasons, Count II of the Ungers' Complaint against PA Investigator Cook and Delaware County must be dismissed.

## B.  MPD OFFICERS

Turning to the Ungers' allegations against the MPD Officer Defendants in their personal capacity with respect to Count II, the Court concludes that the claims against MPD Officers Ramsey and Hopper must be dismissed; but the claims against MPD Officers Scaife and Watson may proceed.  The Ungers have failed to support their conclusory allegations of liability against MPD Officers Ramsey and Hopper with facts either to show that they personally participated in execution of the search warrant, which is the action alleged to have caused the unconstitutional deprivation of the Ungers' property; or that Ramsey and/or Hopper directed the actions of others in execution of the warrant.[3]  Such allegations are required to state a claim under § 1983.

---

[3] The Ungers allege that MPD Officer Hopper visited the Ungers' home without a warrant and, along with MPD Officer Scaife, told James that they could arrest Tamora for taking Hudson's property out of Hudson's house.  No constitutional deprivation is alleged with respect to this visit alone; therefore, it cannot form the basis for personal liability as to MPD Officer Hopper.

*See  Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003).  Because MPD Officers Ramsey and Hopper took no personal action with respect to the alleged deprivation, Count II must be dismissed as against them.

MPD Officers Scaife and Watson, however, stand on different footing.  The allegations suggest that when MDP Officers Scaife and Watson executed the search warrant they allowed civilians to participate in the search; they took property that belonged to the Ungers, presumably property not covered by the search warrant, or they allowed the civilians to do so; and they allowed Sigler and Stanley to obtain the Ungers' keys, property that would not have been covered by the warrant to retrieve Hudson's property.  In other words, the Ungers have plausibly alleged that MPD Officers Scaife and Watson executed the search in a manner that violated their right to be free from unreasonable searches and seizures.  This is a cognizable claim under the Fourth Amendment, regardless of whether there are state court remedies available. *See Guenther v. Holmgren*, 738 F.2d 879, 882-83 (7th Cir. 1934) (restating the conclusion in *Monroe v. Pape*, 365 U.S. 167, 183 (1961), "that a substantive Fourth Amendment[, applicable to the states under the Fourteenth Amendment,] violation gives rise to a cognizable § 1983 action regardless of the existence of state court remedies"). *Cf. Willits v. Wal-Mart Stores, Inc.*, No. IP99-0276-C-M/S, 2001 WL 1028482, at **4-6 & 12-14 (S.D. Ind. Aug. 14, 2001) (concluding that allowing civilians to help in executing a warrant and allowing the civilians to take property outside the scope of the warrant entitled plaintiff to summary judgment under § 1983).

MPD Officers Scaife and Watson adopt the Indiana Tort Claims Act immunity arguments of PA Investigator Cook in their reply brief, but those immunity arguments

are not applicable to allegations that the seizure of the Ungers' property exceeded the scope of the warrant.

### C.  CITY OF MUNCIE

The City of Muncie contends that the Ungers have failed to set forth facts sufficient to support municipal liability for execution of the search warrant by MPD Officers Scaife and Watson.  In contrast, the Ungers assert that the facts surrounding the execution of the warrant are sufficient to support a claim that the City of Muncie failed to train its police officers.  Specifically, the Ungers argue that their allegation that the MPD Officers "intentionally exercised dominion and control over the [Ungers'] personal property . . . in a manner that seriously interfered with [the Ungers'] right to the control and possession of this personal property," is enough to show that the officers were deliberately indifferent.  Because the City of Muncie should have trained the officers to enforce its policies in a lawful way, the Ungers contend that they have stated a claim.

The Court agrees with the Ungers that they have sufficiently pled facts to support a claim of municipal liability against the City of Muncie for the execution of the warrant. To succeed on their claim that the City of Muncie should be liable to them, the Ungers were required to plead that the municipality had "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitional injury was caused by a person with 'final policymaking authority.'" *McTigue v. Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).  Here, the Ungers have alleged

18

that MPD Officers Scaife and Hopper visited the Ungers' home without a warrant and threatened Tamora with arrest if she failed to surrender Hudson's property and that MPD Officer Scaife threatened to shoot the Ungers' dog while they were incarcerated. Both of these actions could plausibly be interpreted as intimidation.  In addition, the Ungers have alleged that MPD Officers Scaife and Watson allowed civilians to participate in execution of the search warrant, allowed the civilians to take property outside the scope of the warrant or exceeded the scope of the warrant themselves, and allowed civilians to obtain the Ungers' keys.  These allegations, taken together, make it plausible that the MPD Officers were acting in accordance with an unwritten custom within the Muncie Police Department if their supervisors were condoning such actions. Under the standard at the pleadings stage, these allegations are enough to put the City of Muncie on notice of the nature of the custom alleged to exist.

In summary, Count II is dismissed against PA Investigator Cook, Delaware County and MPD Officer Ramsey in his personal and official capacity and against MPD Officer Hopper in his personal capacity.  However, Count II survives against MPD Officers Scaife and Watson in their personal and official capacity and the City of Muncie.

### V. <u>COUNT III – CONSPIRACY PURSUANT TO 42 U.S.C. § 1985(3)</u>

The Ungers allege that PA Investigator Cook, and by association, Delaware County; the MPD Officer Defendants, and by association, the City of Muncie; and the Individual Defendants collaborated to deprive the Ungers of their civil rights in violation of 42 U.S.C. § 1985(3).  More specifically, the Ungers contend that they have alleged sufficient facts to state a "class of one claim," in that the Defendants singled them out

arbitrarily and without rational basis for unfair treatment.  Dkt. No. 67, at 28; Dkt. No. 72, at 28.

The Defendants allege that there is no support for the Ungers' assertion that they may assert a class of one claim under § 1985(3).  Dkt. No. 70, at 12-13; Dkt. No. 75, at 12-13.  In addition, the Defendants argue that the Ungers have not asserted facts to support the element of a meeting of the minds.  Dkt. No. 70, at 13-14; Dkt. No. 75, at 13.

The Ungers have not pointed to one § 1985(3) claim brought under a class of one theory that has survived and, after a search, the Court has not located one either.  Rather, the only cited case law weighs against such a claim.  *See McCleester v. Dept. of Labor & Indus.*, Civil Action No. 3:06-120, 2007 WL 2071616, at *14-15 (W.D. Pa. July 16, 2007) (listing cases refraining from transforming § 1985(3) into a "general federal tort law"); *Traveler v. Ott*, No. 1:06-CV-304, 2006 WL 3450602, at *2 (N.D. Ind. 2006); *Axt v. City of Fort Wayne*, No. 1:06-CV-157-TS, 2006 WL 3093235, at *4 (N.D. Ind. Oct. 30, 2006) (citing, *inter alia*, *Grifin v. Breckenridge*, 403 U.S. 88, 102 (1971) (requiring that § 1985(3) plaintiffs establish "some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action"); *Munson v. Frisk*, 754 F.2d 683, n.8 (7th Cir. 1985) (same); *Underfer v. Univ. of Toledo*, 36 F3d. Appx. 831, 833-34 (6th Cir. 2002) (declining to extend § 1985(3) claim to a "class of one")).  The Court adopts the reasoning in these cases and declines to allow the Ungers to proceed as a class of one under § 1985(3).

For these reasons, the Ungers' conspiracy claim against the moving Defendants must be dismissed.

20

## VI.  STATE TORTS –
## ABUSE OF PROCESS, MALICIOUS PROSECUTION,
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS &
## TRESPASS

The Ungers claim that PA Investigator Cook, Delaware County, the MPD Officer Defendants, the City of Muncie and the Individual Defendants, conspired to arrest the Ungers and deprived them of their property because of "the significant emotional turmoil that existed between [the Ungers] and Sigler following the death of Hudson."  Compl. ¶¶ 115-17, ¶ 121.   The Complaint states that the Individual Defendants encouraged the state actors to institute criminal proceedings against the Ungers to coerce, harass and retaliate against the Ungers for the benefit of Sigler.  *Id.* ¶¶ 136-37.  The Ungers further allege that Delaware County and the City of Muncie failed to train PA Investigator Cook and the MPD Officers properly, which led to abuse of process.[4]  *Id.* ¶¶ 125-29. Furthermore, the Ungers allege that MPD Officer Scaife's threat to kill their dog and subsequent entry into their home with civilians to execute the search warrant caused them emotional distress.  *Id.* ¶ 143. The Ungers' assert that all of the Defendants' "extreme and outrageous conduct" caused them emotional and physical harm, particularly in the wake of Hudson's death.  *Id.* ¶¶ 145-47.   Finally, the Ungers contend that MPD Officers Scaife and Watson entered their home without justification to remove Hudson's possessions from their home and allowed civilians to obtain keys to the home,

---

[4] Neither abuse of process nor malicious prosecution is a constitutional tort under § 1983, absent an alleged violation of a specific constitutional provision, because Indiana law provides a remedy for both.  *See Adams v. Rotkvich*, 325 Fed. Appx. 450, 452-53 (7th Cir. 2009) (citing, *inter alia*, *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001)); *see also Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462, 464 (7th Cir. 2009) (describing the elements of, respectively, a malicious prosecution claim and an abuse of process claim in Indiana).  Therefore, the Court will analyze these claims under Indiana state law.

civilians who then re-entered the Ungers' home without the Ungers' permission.  Compl.

¶¶ 162-65.  The Ungers allege that these entries constitute trespasses.  *Id.* ¶ 165.

PA Investigator Cook contends that he is immune from suit under Indiana law

and that state torts[5] may not be leveled against individual government employees acting

within the scope of their employment.  Correspondingly, Delaware County asserts that it

cannot be held liable for any torts of PA Investigator Cook because it is not his

employer.  Although the MPD Officers and the City of Muncie never mention immunity in

their opening brief, in reply, the MPD Officers incorporate by reference PA Investigator

---

[5] Under Indiana law, an abuse of process claim has the following elements:  (1) an ulterior purpose or motive; and (2) a willful act in the use of process not proper in the regular conduct of the proceeding.  *Golden Years Holmstead*, 557 F.3d at 464.  An ulterior motive may encompass "a desire 'to embarrass, annoy and ridicule;'" however, mere negligence is insufficient.  *Id.* (quoting *Conner v. Howe*, 344 F. Supp. 2d 1164, 1175 (S.D. Ind. 2004)).  Further, "'[t]he gravamen of [this] tort is . . . some extortionate perversion of a lawfully initiated process to illegitimate ends.'"  *Conner*, 344 F. Supp. 2d at 1175 (quoting *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994)).

Under Indiana law, a malicious prosecution claim has the following elements: "'(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor.'" *Golden Years Holmstead*, 557 F.3d at 462 (quoting *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind. Ct. App. 2005)).  "Malice may be shown by evidence of personal animosity or inferred from a complete lack of probable cause or a failure to conduct an adequate investigation." *Id.* (citing *F.W. Woolworth Co. v. Anderson*, 471 N.E.2d 1249, 1254 (Ind. Ct. App. 1985)).

In Indiana, a claim for Intentional Infliction of Emotional Distress ("IIED") requires pleading that "extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress."  *City of Anderson v. Weatherford*, 714 N.E.2d 181, 184 n.3 (Ind. Ct. App. 1999).

To state a claim for trespass, the Ungers must allege that they were in possession of the property in question and that the Defendants entered it without a right to do so.  *See Turner v. Sheriff of Marion Cnty.*, 94 F. Supp. 2d 966, 984 (S.D. Ind. 2000) (citing, *inter alia*, *Calumet Nat'l Bank v. Am. Tel. & Tel. Co.*, 682 N.E.2d 785, 788 (Ind. 1997)).

Cook's arguments regarding immunity under the Indiana Tort Claims Act.  Dkt. No. 70, at 9-10.

The Court concludes that PA Investigator Cook is entitled to immunity for any of the Ungers' claims pursuant to Indiana law.  In Indiana, a prosecutor, or those under his employ, is entitled to prosecutorial immunity for acts within the scope of his authority. *See Clifford v. Marion Cnty. Prosecuting Atty.*, 654 N.E.2d 805, 810 (Ind. Ct. App. 1995).  The scope of this immunity is broader than that under federal law.  *See Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998) (discussing the Indiana Supreme Court's rejection of the U.S. Supreme Court's distinction between prosecutorial and investigative functions for purposes of immunity).  Indiana Code § 33-39-4-1(b) provides that a prosecutor's investigator "has the same police powers within the county authorized by law to all police officers."  PA Investigator Cook caused a search warrant to issue and, apparently, an arrest warrant, pursuant to his duties under Indiana law to conduct investigations and utilize the police powers authorized by statute.  Therefore, he was acting within the scope of a prosecutor's authority when he caused the warrants to issue and is immune from suit.

Even if prosecutorial immunity does not apply to PA Investigator Cook, he would be immune from suit under the Indiana Tort Claims Act, Indiana Code §§ 34-13-3-3(6) & (8), which provides, in relevant part, that officials who are acting within the scope of their employment are immune from liability in tort.  The Ungers never allege any activities by PA Investigator Cook that are outside of his employment as a prosecuting attorney investigator; therefore, there is no basis for state tort liability as against PA Investigator Cook.

As previously discussed, PA Investigator Cook is not an employee of Delaware County; therefore, it cannot be held liable for the activities of PA Investigator Cook under respondeat superior liability.  As a result, the Ungers' claim for abuse of process against Delaware County must be dismissed.

Similarly, the Ungers' state law claims against the MPD Officer Defendants are barred by official immunity.  *See* Ind. Code § 34-13-3-3(8); *Norris v. Bd. of Educ. of Greenwood Cmty. Sch. Corp.*, 797 F. Supp. 1452, 1460 (S.D. Ind. 1992).  The Ungers claim that the MPD Officers were acting within the scope of their employment when they committed the relevant torts.

Although the law supports the theory of respondeat superior to hold the City of Muncie liable for actions of its employees that harm, the Court has concluded that the MPD Officers were entitled to immunity from the Ungers' state law tort claims; therefore, no liability may attach to the City of Muncie.  *See Comer-Marquardt v. A-1 Glassworks, LLC*, 806 N.E.2d 883, 887 (Ind. Ct. App. 2004) (stating that "if the servant or agent is released of liability, no liability can be imputed to the principal").

With respect to all of the Indiana torts against the moving Defendants, the Ungers received the process they were due through the legislative process when the Indiana legislature debated and passed the statute that provides for immunity under these circumstances.  *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982) (concluding that a legislative determination of immunity "provides all the process that is due").

## VII.  SUMMARY

The Court summarizes its conclusions as follows:

Count I – Dismissed as against Delaware County;

Count II – Dismissed as to PA Investigator Cook; Delaware County; and MPD Officers Ramsey and Hopper;

Count III – Dismissed as to all moving Defendants;

Count IV – Dismissed as to all moving Defendants;

First Count V – Dismissed as to all moving Defendants;

Second Count V – Dismissed as to all moving Defendants;

Count VII – Dismissed as to all moving Defendants.

## VIII.  CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** the Defendants', City of Muncie, Officers George Hopper, Nicholas Ramsey, Jeff Watson and Robert D. Scaife, Motion for Judgment on the Pleadings (Dkt. No. 59); and **GRANTS in part and DENIES in part** the Defendants', Jerry W. Cook, Delaware County and Sheriff Michael Scroggins, Motion for Judgment on the Pleadings (Dkt. No. 64).

IT IS SO ORDERED this 6th day of June, 2013.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution:

Matthew L. Hinkle
COOTS HENKE & WHEELER
mhinkle@chwlaw.com

Cory Christian Voight
COOTS HENKE & WHEELER, P.C.
cvoight@chwlaw.com

Mark R. McKinney
DENNIS WENGER & ABRELL
mckinneym@dwapc.com

John H. Brooke
LAW OFFICES OF JOHN H. BROOKE
jbrooke@jhbrookelaw.com

Leslie Michelle Mathewson
Law Offices of John H. Brooke, PC
lmathewson@jhbrookelaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com